IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR T. POWELL, II** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 07-726** |
| | : | |
| **GREATER MEDIA INC. LONG TERM** | : | |
| **DISABILITY PLAN and GREATER** | : | |
| **MEDIA INC.** | : | |
| **Defendants.** | : | |
| | : | |

## ORDER & MEMORANDUM

## ORDER

**AND NOW**, this 13th day of August, 2008, upon consideration of Plaintiff's Motion for

Summary Judgment and Memorandum of Law in Support thereof (Documents Nos. 9 and 10,

filed November 12, 2007); Defendants' Response to Plaintiff's Motion for Summary Judgment

and Defendants' Cross Motion for Summary Judgment (Document No. 11, filed November 28,

2007); and Plaintiff's Memorandum of Law in Response to Defendants' Cross Motion for

Summary Judgment and in Support of his Motion for Summary Judgment (Document No. 12,

filed December 12, 2007), for the reasons set forth in the attached Memorandum, **IT IS**

**ORDERED** as follows:

1. Plaintiff Arthur T. Powell, II's Motion for Summary Judgment is **DENIED**;

2. Defendants Greater Media Inc. Long Term Disability Plan and Greater Media Inc.'s

    Motion for Summary Judgment is **GRANTED**; and

3. **JUDGMENT IS ENTERED** in **FAVOR** of defendants Greater Media Inc. Long Term

    Disability Plan and Greater Media Inc., and **AGAINST** plaintiff Arthur T. Powell, II.

<u>MEMORANDUM</u>

I.      BACKGROUND

        A.      <u>Factual Background</u>

                1.      **Severance and Release Agreement**

Plaintiff, Arthur T. Powell, II, worked for defendant Greater Media Inc. ("Greater

Media") for twenty six years in various sales capacities.  (Pl.'s Dep. 9-10.)  On August 25, 2005,

plaintiff was informed by Bob DeBlois, Greater Media's General Sales Manager, and Don Braun,

Greater Media's Director of Sales, that he would be terminated effective September 2, 2005.  (Id.

11-13.)  In connection with his termination, plaintiff was given a draft Severance Agreement and

Release ("Severance Agreement and Release") to review.  It provided for certain severance

payments and insurance benefits in exchange for a release of claims.  (See Ex. D to Defs.' Mot.

for Summ. J.)

One paragraph of the Severance Agreement and Release is at issue in the case - the third

paragraph.  The Court explains below the evolution of that provision.  The case turns on the

impact of (a) that paragraph of the Severance Agreement and Release as finally approved by the

parties, and (b) Greater Media's Disability Insurance Policy ("the Policy") on plaintiff's claim for

disability benefits under the Policy.  (See Ex. L to Defs.' Mot. for Summ. J.)  GE Group Life

Assurance Company ("Genworth Financial" or "Genworth") is the issuer of the Policy.  (Id.)

As originally drafted, the third paragraph of the Severance Agreement and Release read as

follows:

> Employee may elect to continue receiving group medical and dental insurance
> benefits for up to eighteen months after the Termination Date, provided he remains
> eligible for such coverage under COBRA.  Company will pay the monthly premium

for these benefits through September 2006 (the "COBRA Payments"), subject to
customary deductions for Employee's share of the premium.  Thereafter, all such
payments will be Employee's sole responsibility.  Employee's rights to all other
benefits, including vacation and sick leave, shall cease on the Termination Date.

(Ex. D to Defs.' Mot. for Summ. J.)

Plaintiff negotiated an increase in his severance payment from $43,538.00 to
$125,000.00.  (Pl.'s Dep. 13, 32.)  On September 15, 2005, following the negotiation of this
increased severance payment, plaintiff retained Joyce Collier, Esquire, to represent him in further
negotiations with Greater Media.  (Id. 38; Collier Dep. 35.)  After she was retained, Ms. Collier
began discussions with Ellen Rubin, Esquire, Greater Media's General Counsel.  Ms. Collier did
not speak to anyone else at Greater Media about plaintiff.  (Collier Dep. 29-30.)  The
negotiations between Ms. Collier and Ms. Rubin were conducted primarily by email,
supplemented by several telephone conversations.  (Id.)

In her first telephone call to Ms. Rubin, Ms. Collier requested a copy of Greater Media's
Long-Term Disability Plan ("LTD Plan").  (Rubin Dep. 9.)  Ms. Rubin testified that, from this
conversation, she "understood that [plaintiff] might have some sort of condition that would
qualify as a disability, and she [Ms. Collier] . . . wanted to determine . . . his eligibility and . . .
the value of the benefit."  (Id. 10.)  Ms. Rubin memorialized this phone call in an email to Gina
Ameci, outside counsel for Greater Media.  (Id. 9-11; Ex. E to Defs.' Mot. for Summ. J.)  In this
email, dated September 21, 2005, Ms. Rubin wrote: "I just spoke with [plaintiff's] attorney
(Joyce Collier of Collier Law Offices in Plymouth Meeting).  She clarified that she wanted to
know about the LTD policy to determine the value of what [plaintiff] is losing.  . . . She will
likely discover that [plaintiff] will not be covered, and then try to jack us up for more money."
(Ex. E to Defs.' Mot. for Summ. J.)

At 2:19 p.m. on September 28, 2005, Ms. Collier sent an email to Ms. Rubin requesting

the addition of the following language to the end of paragraph 3 of the Draft Agreement:

"Company will assist Employee with the filing of any long-term disability claim that he may file

with Employer's carrier." (Ex. F to Defs.' Mot. for Summ. J.)  The email gave no reason for the

requested change and Ms. Collier testified that she did not discuss this language with Ms. Rubin.

(Collier Dep. 60.)  Ms. Collier testified that although plaintiff had not filed a disability claim at

that point, "I was trying to get her to agree to additional language that would leave open the

possibility of long-term disability claims in the future." (Id. 54.)

At 5:36 p.m. on September 28, 2005, Ms. Rubin responded to Ms. Collier's email.  In

response to Ms. Collier's request to include language in the severance agreement about the filing

of long-term disability claims, Ms. Rubin wrote:

> On the LTD assistance language, I'd like to add the concept of "consistent with
> standard company practice."  I don't believe we typically get involved with the
> claims process, other than facilitating communications with the insurance carrier and
> that sort of thing.  We wouldn't do the actual paperwork or anything like that, so I
> don't want to commit to something that's outside our expertise and functionality.

(Ex. G to Defs.' Mot. for Summ. J.)  Ms. Collier did not recall having a conversation with Ms.

Rubin about this language.  (Collier Dep. 65.)

At 6:04 p.m. on September 28, 2005, Ms. Rubin sent an email to Greater Media's outside

counsel, Gina Ameci.  After quoting Ms. Collier's proposed language, Ms. Rubin explained to

Ms. Ameci what she was trying to accomplish in her reply email to Ms. Collier (Ex. G):

> You will see how I tried to handle the LTD request at the end of paragraph
> 3.  Obviously, we don't want to stand in his way if he can get coverage.  He
> was diagnosed while still employed, so maybe he has a shot.  The lawyer did
> acknowledge that he should have filed for STD while employed, and his
> manager advised him to do so on multiple occasions.

(Ex. H to Defs.' Mot. for Summ. J.)  Ms. Rubin testified that she assumed plaintiff would

proceed under the theory that he was entitled to disability benefits because his condition arose

while he was still employed.  (Rubin Dep. 26-27.)

At 9:36 a.m. on September 29, 2005, Ms. Collier responded to Ms. Rubin's 5:36 p.m.

email of September 28, 2005, stating, "I'm fine with your language on the LTD issue."  (Ex. I to

Defs.' Mot. for Summ. J.)

At 12:19 p.m. on September 29, 2005, Ms. Rubin replied to Ms. Collier's email and

attached the revised Severance Agreement and Release.  (See Ex. K to Defs.' Mot. for Summ. J.)

By the time Ms. Collier received this email, she had also received a copy of Greater Media's

Disability Insurance Policy.  (Collier Dep. 72; Ex. L to Defs.' Mot. for Summ. J.)  Paragraph 3 of

the revised Agreement read as follows:

> Employee may elect to continue receiving group medical and dental insurance
> benefits for up to eighteen months after the Termination Date, provided he remains
> eligible for such coverage under COBRA.  Company will pay the monthly premium
> for these benefits through September 2006 (the "COBRA Payments"), subject to
> customary deductions for Employee's share of the premium.  Thereafter, all such
> payments will be Employee's sole responsibility.  Employee's rights to all other
> benefits, including vacation and sick leave, shall cease on the Termination Date.
> **However, the Company agrees to act in accordance with standard Company
> practice for current employees if Employee files a claim under Company's long
> term disability policy.  Employee acknowledges and understands that
> Company's insurance carrier will make all determinations as to Employee's
> eligibility for coverage under such policy.**

(Ex. K to Defs.' Mot. for Summ. J. (emphasis added to highlight new language)).

With this language, Ms. Rubin believed she was "obligating the company to extend to

[plaintiff] the same courtesies and consideration that we would extend to any current employee

who was in the course or process of filing a long-term disability claim," which amounted to

facilitating communications with the insurance carrier.  (Rubin Dep. 39.)

Ms. Collier testified that she discussed the revised language with Ms. Rubin over the

telephone on September 29, 2005.  (Collier Dep. 86.)  Specifically, Ms. Collier testified that:

> I think we had a very vague conversation about what is . . . standard company
> practice.  And it wasn't extensive or anything but it was, . . . if he files a claim, we're
> not going to do the paperwork or anything like that.  It was not very different than the
> email I got . . . the night before about we won't commit to something that's outside
> our expertise and functionality.

(Id.)  After the conversation, a clean copy of the Severance Agreement and Release (the "Final

Agreement") was generated.  Plaintiff and Greater Media signed the Final Agreement on

September 29, 2005.  (Ex. M to Defs.' Mot. for Summ. J.; Pl.'s Dep. 28.)  Plaintiff testified that

he signed the Final Agreement because he felt that the language included in the Agreement

covered all of his concerns.  (Pl.'s Dep. 43).  Specifically, plaintiff believed, based on reviewing

the language in the Agreement and his discussions with Ms. Collier, that being treated "as a

current employee" meant that his "disability policy would be kept current, and that in the event

[he] became disabled [he] would be eligible to apply for disability with Greater Media's carrier

and to potentially be deemed disabled, if that were so the case."  (Id. 50.)

### 2.    Disability

Disability insurance coverage was the main focus of the negotiations between plaintiff's

attorney, Joyce Collier, and Greater Media because plaintiff suffers from peripheral neuropathy.

Plaintiff testified that he first noticed symptoms of his illness, received initial treatment, and was

diagnosed with peripheral neuropathy in February 2005, while he was still employed by Greater

Media. (Pl.'s Dep. 17-18, 22.)  Plaintiff admitted that Greater Media's management suggested

that he apply for disability benefits while he was still employed, but he did not do so.  (Id. 20.)

Plaintiff filed a disability claim on July 20, 2006.  The claim stated that he was unable to work due to disability starting March 13, 2006.  (Id. 16-17; Ex. N to Defs.' Mot. for Summ. J.) By letter dated August 24, 2006, Genworth denied plaintiff's Long Term Disability claim on the grounds that (1) plaintiff's coverage under the plan terminated on September 17, 2005; (2) plaintiff listed the date of total disability as March 13, 2006 on his application for benefits, and thus the reported medical disability was "after the termination date of coverage under this plan"; and (3) as a result, "[n]o benefits [were] payable for this period of disability under the terms of this policy."  (Ex. E to Pl.'s Mot. for Summ. J.)

Plaintiff appealed the denial of benefits, and by letter dated January 3, 2007, Genworth denied the appeal.  (Ex. F to Pl.'s Mot. for Summ. J.)  In this letter, Genworth explained that eligibility for coverage under the Policy was "limited to full-time employees of Greater Media, Inc." and that plaintiff "ceased to be an Active Full-Time Employee by his termination of employment" in September 2005.  (Id.)  Genworth noted that it had "not been provided with any information to determine if [plaintiff] met the requirements for coverage under this policy prior to the termination of his employment . . . and can make no determination regarding his eligibility for coverage on this policy" based on disability prior to termination.  (Id.)  In making the determination that plaintiff was not eligible for long term disability benefits, Genworth reviewed a copy of the Severance Agreement that plaintiff had sent to Genworth with his letter of appeal. Genworth rejected plaintiff's interpretation of paragraph 3 of the Severance Agreement, concluding that the language did not support plaintiff's position that Greater Media had "agreed that under its Plan, [plaintiff] will continue to be considered as actively employed not withstanding [sic] his termination."  (Id.)  Genworth emphasized that the Severance Agreement

specifically stated that the carrier would determine eligibility for coverage and explained that

coverage under the Policy as written was limited to Active Full-Time Employees.  (Id.)

Genworth also relied on the Policy provision which required a written agreement between

Genworth and the Policyholder to change the terms of the Policy, and argued that "[n]o written

agreement has been made that alters the coverage eligibility requirements of this policy."  (Id.)

> ### 3.      Genworth Policy

The pertinent provisions of the Genworth Long Term Disability Insurance Policy are as

follows:

(a) Eligible Class: "All active full-time employees who satisfy the coverage eligibility

requirements."

(b) Active Full-Time Employee: "You are an Active Full-Time Employee if you are

(1) [a]ctively working at your Employer's usual place of business . . . ; and . . . (3) [p]erforming

all duties of your Regular Occupation and working an average of at least 25 hours per week . . .

for the most recent 3 months or your period of employment, whichever is less."

(c) Termination of Employee Insurance: "The LONG TERM DISABILITY INSURANCE

coverage for you will automatically cease on the earliest date shown below: (1) [o]n the date you

are no longer an Active Full-Time Employee in a class eligible for insurance; (2) [o]n the date

your employment terminates.  Cessation of active employment will be deemed termination of

employment as an Active Full-Time Employee, except that your insurance will be continued

while you are Disabled and entitled to benefits under this plan provided your premiums continue

to be paid during the Elimination Period."

(d) Termination Without Prejudice: "Any termination will be without prejudice to any claim arising prior to such termination, provided you are Disabled on the date of termination."

(e) Changes to the Policy: Genworth "and the Policyholder can change the policy in its entirety or with respect to any or all class or classes of Employees of any Employer at any time if [Genworth] and the Policyholder agree in writing to make such a change."
(See Ex. L to Defs.' Mot. for Summ. J.)

### B.      Summary of the Pleadings

On February 22, 2007, plaintiff filed a Complaint against Greater Media Inc. Long Term Disability Plan and Greater Media Inc. based on the alleged "refusal" of defendants to "honor a specifically negotiated provision in a severance agreement and release, in which Defendants agreed to treat [plaintiff] as a current employee under its [sic] Long Term Disability Plan notwithstanding the termination of his employment."  (Compl. at 1.)  Plaintiff's Complaint includes three counts.

In Count I, plaintiff asserts a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against defendant Greater Media Inc. Long Term Disability Plan.  Plaintiff asserts that "[p]aragraph 3 of the Severance Agreement and Release constitutes a de facto amendment of the Plan applicable to [plaintiff]" and the Plan is "bound by the terms of paragraph 3 of the Severance Agreement and Release."  (Compl. ¶¶ 32-33.)  Plaintiff thus seeks "judgment in his favor, and against the Plan[,] enforcing plaintiff's rights under the Plan in the form of an order declaring that the Plan shall deem Plaintiff an eligible employee under the Plan, and to evaluate his claim thereunder."  (Id. at 6.)

In Count II, plaintiff asserts an equitable estoppel claim under ERISA, 29 U.S.C.

§ 1132(a)(3), against Greater Media Inc. Long Term Disability Plan and Greater Media Inc.  In

this count, plaintiff asserts that Greater Media Inc. and/or Greater Philadelphia Radio Inc. (a

subsidiary of Greater Media Inc.), on behalf of itself and the Plan, "agreed that the Plan would

act in accordance with standard Company practice for current employees if [plaintiff] filed a

claim under the Company's long-term disability policy and that the Company as Plan

Administrator had "failed to act in accordance with standard Company practice for current

employees, by treating [plaintiff] as a terminated employee for purposes of his long-term

disability claim." (Compl. ¶¶ 35-36.)  Plaintiff asserts that the Company "has thereby

misrepresented the terms of [plaintiff's] treatment under the Plan"; that plaintiff "relied to his

detriment" on the misrepresentation by, *inter alia*, "waiving claims related to the termination of

his employment"; and that the "negotiation of the release, [plaintiff's] release of claims, and his

good-faith reliance on the terms and conditions of his Severance Agreement and Release,

together with the totality of the circumstances arising therefrom, constitutes extraordinary

circumstances."  (Id. ¶¶ 37-39.)  Plaintiff thus seeks an injunction "barring the Plan from denying

[plaintiff's] claim for long term disability benefits on the ground that he was not actively

employed at the time of his application for long-term disability benefits" and "requiring the Plan

to reconsider [plaintiff's] claim for benefits."  (Id. at 7.)

In Count III, plaintiff asserts a claim for breach of fiduciary duty under ERISA, 29 U.S.C.

§ 1132(a)(3)(B), against Greater Media Inc. and Greater Media Inc. Long Term Disability Plan.

Plaintiff asserts that Greater Media Inc. is a fiduciary of the Plan within the meaning of ERISA;

that the Company's agreement in the Severance Agreement and Release "to act in accordance

with standard Company practice for current employees in the event that [plaintiff] filed a claim

for benefits in the future constitutes a misrepresentation"; that the "misrepresentation was

material" to plaintiff's decision to execute the Severance Agreement and Release; and that

plaintiff "relied to his detriment on the terms and conditions set forth in the agreement."  (Compl.

¶¶ 41, 43-45.)  Plaintiff thus seeks an injunction "barring the Plan from denying [plaintiff's]

claim for long term disability benefits on the ground that he was not actively employed at the

time of his application for long-term disability benefits" and "requiring the Plan to reconsider

[plaintiff's] claim for benefits."  (Id. at 8.)

Plaintiff and defendants have filed cross-motions for summary judgment presenting

arguments on each of the three counts of the Complaint.  These arguments are set forth in Part III

below to the extent necessary to explain the Court's ruling.

## II.    STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  A "genuine" issue exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it "might affect the outcome

of the suit under the governing law."  Id.  In considering a motion for summary judgment, the

"facts must be viewed in the light most favorable to the party opposing summary judgment."

Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party

opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations,

or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir.

1982).

III.    **DISCUSSION**

      A.    **Count I: Claim for Benefits under 29 U.S.C. § 1132(a)(1)(B)**

      Plaintiff argues that he has a valid claim for benefits under ERISA based on the sentence

in paragraph 3 of the Severance Agreement and Release which reads: "However, the Company

agrees to act in accordance with standard Company practice for current employees if Employee

files a claim under Company's long term disability policy."  (Ex. M to Defs.' Mot. for Summ. J.)

Specifically, plaintiff argues that the Greater Media, Inc. Long Term Disability Plan "acts

informally according to the terms of the insurance agreement between Greater Media and

Genworth.  Although informal in nature, there is a Plan nevertheless."  (Pl.'s Mot. for Summ. J.

4.)  Plaintiff asserts that through its negotiations with plaintiff, Greater Media modified the terms

of the informal plan, deleting the "actively at work" requirement of the Plan through the language

in the Severance Agreement quoted above.  (Id.)  Hence, plaintiff "has a claim for benefits

according to those terms pursuant to [§] 1132(a)(1)(B), and he is entitled to a clarification of his

rights to benefits under the terms of the Plan as modified, *i.e.*, that he was a participant in the

Plan at the time he applied for benefits, and entitled to any disability payments for which he is

otherwise qualified."  (Id. at 5.)  29 U.S.C. § 1132(a)(1)(B) enables an ERISA beneficiary "to

recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

the plan, or to clarify his rights to future benefits under the terms of the plan."

In Plaintiff's Memorandum of Law in Response to Defendants' Cross-Motion for Summary Judgment and in Support of His Motion for Summary Judgment ("Plaintiff's Response") (Doc. No. 12), plaintiff introduces a second theory for his claim for benefits.  In that Memorandum, plaintiff asserts that "there was no 'informal amendment' of Greater Media's LTD Plan; instead, Greater Media, through its negotiations with plaintiff, created an informal ERISA plan applicable to him," and only him.  (Pl.'s Response 4.)  "Under the terms of that plan, plaintiff was entitled to receive benefits if he became disabled during the time he was receiving severance payments."  (Id.)

The Court rejects both of plaintiff's arguments in support of Count I of the Complaint, the claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  First, the Court rejects plaintiff's contention in his Response to Defendants' Motion for Summary Judgment that the applicable ERISA Plan in this case was an informal ERISA plan applicable solely to plaintiff and created by the Severance and Release Agreement.  (Pl.'s Response 4-5.)  As plaintiff asserts in his Motion for Summary Judgment, the ERISA "Plan" in this case is the Long Term Disability Policy issued by Genworth to Greater Media.  (See Pl.'s Mot. for Summ. J. 4 (stating "the Plan acts informally according to the terms of the insurance agreement between Greater Media and Genworth")).  Also on this issue, plaintiff alleges in the Complaint that paragraph three of the Agreement "constitutes a de facto amendment of the Plan," not that paragraph three of the Severance Agreement and Release creates an ERISA Plan.  (Compl. ¶ 32.)

This Court has previously found an insurance policy to be the "Plan" in an ERISA case, see DeLong v. Teacher's Insurance and Annuity Association, 2000 WL 426193, at *4 (E.D. Pa. March 29, 2000), and the facts of this case support the same finding here.  The Third Circuit has

held that the test for determining the existence of an ERISA plan is as follows:

> "[T]he crucial factor in determining whether a 'plan' has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis." Diebler v. Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (quotations and citation omitted).  In short, a plan under ERISA "is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982); see also Henglein v. Informal Plan for Planned Shutdown Benefits for Salaried Employees, 974 F.2d 391, 399 (3d Cir. 1992); Deibler, 973 F.2d at 209 (quoting Donovan as the "prevailing standard for determining whether a 'plan' within the meaning of ERISA has been established").  "Whether a plan exists within the meaning of ERISA is 'a question of fact, to be answered in light of all the surrounding facts and circumstances and from the point of view of a reasonable person.'" Deibler, 973 F.2d at 209 (quoting Wickman v. Northwestern National Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990)).

Minnis v. Baldwin Bros. Inc., 150 Fed App'x 118, 119-20 (3d Cir. 2005).[1]

Looking at the "surrounding circumstances" in this case, it is clear that the Genworth Policy is the ERISA "Plan" applicable to the dispute.  The Policy defines the beneficiaries of Greater Media's Long Term Disability coverage (Active Full-Time Employees of Greater Media Inc.) and details the benefits and the procedures for obtaining them.  (Ex. L to Defs.' Mot. for Summ. J.)  It is also the document that the parties referenced throughout their Severance Agreement negotiations and that plaintiff sought to modify through those negotiations, both of which suggest that it is the established "Plan" of interest.

Because the Genworth Policy is the ERISA Plan, the terms of the Policy are controlling in this dispute.  As noted above, the Genworth Policy provides for changes to the Policy as follows:

> Changes to the Policy: Genworth "and the Policyholder can change the policy in its entirety or with respect to any or all class or classes of Employees of any Employer

---

[1]  This unpublished opinion has no precedential value under § 5.7 of the Internal Operating Procedures of the Third Circuit, but the Court finds it instructive.

at any time if [Genworth] and the Policyholder agree in writing to make such a change."

(Ex. L to Defs.' Mot. for Summ. J.)  The Third Circuit held in Depenbrock v. CIGNA Corp., 389 F.3d 78, 82 (3d Cir. 2004), that an ERISA plan cannot be amended in a manner "inconsistent with the governing instruments."

The Severance Agreement and Release signed by plaintiff and Greater Media was not the subject of a written agreement between Genworth and Greater Media as the Policyholder.  Thus, under the express terms of the Policy, and under the Third Circuit's ruling in Depenbrock, the provisions of the Severance Agreement and Release cannot constitute an amendment of the policy.  (Ex. L to Defs.' Mot. for Summ. J.; Depenbrock, 389 F.3d at 82.)  As a result, plaintiff cannot establish a claim for benefits under ERISA based on the Severance Agreement and defendant Greater Media Inc. Long Term Disability Plan is entitled to summary judgment on Count I of plaintiff's Complaint.

Even if paragraph three of the Severance Agreement is considered a possible amendment to the Genworth Policy / Plan, and thus a "term" of the Plan, the term is not ambiguous and does not provide support for plaintiff's claim for benefits.  As articulated in Schaeffer v. Albert Einstein Healthcare Network, 2004 WL 1012574, at *3 (E.D. Pa. May 3, 2004):

> The determination of whether an ERISA plan term is ambiguous is a question of law. See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994).  A term is "ambiguous if it is subject to reasonable alternative interpretations." Bill Gray Enters. v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001).  To determine whether a term is ambiguous, the court looks at the language of the document, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.  See Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993).

The language of paragraph three of the Severance Agreement and the evidence provided in support of the parties' interpretations of the "disputed sentence" in that paragraph - which reads,

"However, the Company agrees to act in accordance with standard Company practice for current employees if Employee files a claim under Company's long term disability policy." (Ex. M to Defs.' Mot. for Summ. J. at ¶ 3) - make clear that the "term" of the Severance Agreement at issue is not ambiguous and plaintiff's interpretation of the "disputed sentence" is not a reasonable, tenable one.  The Severance Agreement specifically states that eligibility determinations would be made by Genworth.  (See Ex. M to Defs.' Mot. for Summ. J. ("Employee acknowledges and understands that Company's insurance carrier will make all determinations as to Employee's eligibility for coverage under such policy.")).  Further, Ms. Rubin specifically informed Ms. Collier by email and telephone that the Company only could (and would) get involved in disability claims to the extent of facilitating communications with Genworth.  (Ex. G to Defs.' Mot. for Summ. J.; Collier Dep. 86.)  In light of the language of the Severance Agreement on eligibility determinations and Ms. Rubin's statements to Ms. Collier during the negotiation process, the Severance Agreement cannot be read as waiving eligibility requirements established by Genworth.  As such, plaintiff cannot succeed on a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and defendants' Motion for Summary Judgment is granted as to Count I of the Complaint.

      **B.**      **Count III - Breach of Fiduciary Duty Claim under 29 U.S.C. § 1132(a)(3)(B)**

In Count III, plaintiff asserts a breach of fiduciary duty claim against Greater Media Inc. and Greater Media Inc. Long Term Disability Plan under 29 U.S.C. § 1132(a)(3)(B).  29 U.S.C. § 1132(a)(3)(B) enables an ERISA plan participant or beneficiary to "obtain other appropriate equitable relief (i) to redress . . . violations [of any provisions of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan."

This Court has previously held that a plaintiff who asserts a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) cannot pursue the same claim based on breach of fiduciary duty under the "safety-net" provisions of 29 U.S.C. § 1132(a)(3). Johnston v. Exelon Corp, 2005 WL 696896, at *5 (E.D. Pa. March 23, 2005) (citing Varity v. Howe, 516 U.S. 489, 512 (1996)). Because plaintiff seeks effectively the same relief in Counts I and III, namely an order requiring the Plan to treat plaintiff as an Active Full-Time Employee and to reconsider plaintiff's claim for benefits under the Plan, see Compl. at 5-7, plaintiff cannot pursue relief under both 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3)(B). Thus, defendants' Motion for Summary Judgment is granted as to Count III of the Complaint.

### C.        Count II - Equitable Estoppel Claim under 29 U.S.C. § 1132(a)(3)

Finally, in Count II, plaintiff asserts an equitable estoppel claim under 29 U.S.C. § 1132(a)(3). Plaintiff's equitable estoppel claim in Count II seeks identical relief to his breach of fiduciary duty claim in Count III. As noted above, this relief is effectively the same relief as that sought in Count I, plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Under Johnston and Varity, this claim likewise cannot be pursued with the claim for benefits in Count I. Johnston, 2005 WL 696896, at *5; Varity, 516 U.S. at 512. Thus, defendants' Motion for Summary Judgment is granted as to Count III of the Complaint.

Even if the Court were to consider plaintiff's equitable estoppel claim on the merits, summary judgment for defendants would be appropriate because plaintiff has not produced evidence of "extraordinary circumstances" as is required to succeed on an equitable estoppel claim under ERISA. See Curcio v. John Hancock Mutual Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994) (holding that in order to establish an equitable estoppel claim under ERISA, a claimant

must prove: (1) a misrepresentation; (2) reasonable and detrimental reliance on the misrepresentation; and (3) "extraordinary circumstances.")   "'Extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." Jordan v. Federal Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997).

Nothing in the record indicates fraud or bad faith by defendants.  Ms. Rubin explained to Ms. Collier in email and over the phone the limits of what the Company does in assisting employees with disability claims. (Ex. G to Defs.' Mot. for Summ. J.; Collier Dep. 86.)  Ms. Rubin also wrote to Greater Media's outside counsel: "You will see how I tried to handle the LTD request at the end of paragraph 3.  Obviously, we don't want to stand in his way if he can get coverage.  He was diagnosed while still employed, so maybe he has a shot."  (Ex. H to Defs.' Mot. for Summ. J.)

These communications fall far short of establishing a genuine issue of material fact as to plaintiff's allegations of fraud and bad faith.  To the contrary, they show that Ms. Rubin and Greater Media were not trying to deceive plaintiff or prevent him from obtaining benefits, and thus were not acting in bad faith or in a fraudulent manner.

IV.    CONCLUSION

For the foregoing reasons, the Court concludes that defendants are entitled to summary judgment on all of plaintiffs' claims.  Thus, the Court denies Plaintiff's Motion for Summary Judgment, grants defendants' Motion for Summary Judgment, and enters judgment in favor of

defendants Greater Media Inc. Long Term Disability Plan and Greater Media Inc., and against

plaintiff, Arthur T. Powell, II.


**BY THE COURT:**


        **/s/ JAN E. DUBOIS, J.**
        **JAN E. DUBOIS, J.**